UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| N.K. and L.W., individually and on behalf of J.K., | **COMPLAINT**<br>**12-cv-5038 (JMF)** |
| Plaintiffs-Appellants, | |
| -against- | |
| New York City Department of Education, | **ECF CASE** |
| Defendant-Appellee. | |

Plaintiffs N.K. and L.W., individually and on behalf of J.K., by their attorneys, Regina Skyer & Associates, L.L.P., as and for their Complaint, allege and state the following:

### PRELIMINARY STATEMENT

1. Plaintiffs N.K. and L.W., on behalf of their child, J.K., bring this action pursuant to Section 1415(i)(2) of the Individuals with Disabilities Education Improvement Act ("IDEA"), as amended (20 U.S.C. § 1400 *et seq.*), the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education Law, and Part 200 of the Commissioner's Regulations against the New York City Department of Education (the "DOE"), seeking review and reversal of the State Review Officer's ("SRO") decision dated March 29, 2012, which denied the Parents' request for reimbursement of tuition paid to a private school for the 2011-2012 school year. Decision of the SRO, a copy of which is appended hereto as Exhibit *1[1]

2. J.K. has autism, agenesis of the corpus callosum, apraxia, hypotonia, a seizure

---

[1] Consistent with the usage below, exhibits preceded by an alphabetical reference were exhibits introduced by J.K.'s Parents at the IHO hearing. Numerical exhibits were introduced by the DOE. Citations beginning with "Tr." indicate pages within the transcript of the hearing before the IHO. Starred exhibits have been attached to this Complaint.

disorder and a significant sensory integration dysfunction, which combine to manifest as deficits in regulation, attention and focus, and communication, which in turn affect his academic performance. (Tr. 529-30). Without constant and consistent sensory input throughout the day, J.K.'s hypo-responsive sensory system would render him anxious, disregulated, aggressive, disruptive, and totally unavailable for learning. J.K.'s many diagnoses have impacted him physically as well; J.K. is not fully toilet trained; J.K. has a small stature for his chronological age (SD- 6-3) and presents with gross motor challenges such as limited body awareness, core muscle weakness, and difficulty with motor planning, sequencing, and coordination. SD-4-6, 6-6; Tr. 543.

3.      On December 20, 2011, the Impartial Hearing Officer ("IHO") Diane Cohen dismissed each of the Parents' claims, concluding that the IEP and placement were appropriate for J.K.. The IHO then gratuitously found that the Parents would not have met their burden in proving the appropriateness of Rebecca. (Decision at 27).. (Decision of IHO Cohen ("IHO Decision") attached as Exhibit *2.)

4.      The Plaintiffs appealed the IHO's decision by filing a Petition for Review with the New York State Education Department's Office of State Review. The Plaintiffs appealed the IHO's findings regarding the appropriateness of the DOE's proposed placement and the Rebecca School placement. The SRO upheld the IHO's findings that the DOE offered J.K. a FAPE but declined to address the appropriateness of the unilateral placement at Rebecca..

5.      Through this action, Plaintiffs seek a determination that:

        a.  The DOE failed to provide J.K. with a FAPE for the 2011-2012 school year;

        b.  The Rebecca School was an appropriate placement for J.K.;

    c.   The equities favor J.K. and thus require, that the DOE reimburse J.K.'s Parents for the Rebecca School tuition; and

    d.   That J.K. is entitled to any other further relief as may be just under the circumstances.

## JURISDICTION

6.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 20 U.S.C. § 1415(i)(2)(A) and (3)(A).  This Court has supplemental jurisdiction over any state law claims herein asserted pursuant to 28 U.S.C. § 1367, as such state law claims form part of the same case or controversy as the claims for which this Court has original jurisdiction.

7.     Venue is proper under 28 U.S.C § 1391(b) because the parties reside in this judicial district.

8.     If successful, Plaintiffs are entitled to costs and attorneys fees under 42 U.S.C. § 1988(b) and 20 U.S.C. § 1415(i)(3)(B) *et seq*.

## PARTIES

9.     Initials are used throughout this Complaint to preserve the privacy and confidentiality of the child, J.K., and the family consistent with the privacy provisions promulgated under section 1417(c) of the IDEA, and the Family Education and Privacy Rights Act, 20 U.S.C. § 1232(g).

10.    Plaintiffs N.K. and L.W. are the Parents of J.K.  They reside, along with J.K., in New York, New York.

11.    Defendant DOE is a corporate body, created by Article 52 of the New York State Education Law § 2550 *et seq.*, that manages and controls the public school system of the City of

New York.  On information and belief, the DOE receives funding pursuant to the IDEA, and therefore must comply with that statute's provisions, including providing a FAPE to all students with educationally handicapping conditions, including J.K., who reside within New York City. *See* 20 U.S.C. § 1412.  The DOE's principal place of business is 52 Chambers Street, New York, New York 10007.

## FACTUAL ALLEGATIONS

12. J.K. is a 12-year-old student who has been diagnosed with Autism, agenesis of the corpus callosum, sensory integration disorder, apraxia, hypotonia, and a seizure disorder. (Tr. 460.)[2]

13. These diagnoses present most significantly for J.K. as deficits in regulation, attention, and communication, which in turn affect his academic performance. (Tr. 529-30). Without constant and consistent sensory input throughout the day, J.K.'s hypo-responsive sensory system would render him anxious, disregulated, and totally unavailable for learning. (SD-4-6, 6-6; Tr. 543).

14. J.K.'s many diagnoses have impacted him physically as well; J.K. has a small stature for his chronological age (SD- 6-3) and presents with gross motor challenges such as limited body awareness, core muscle weakness, and difficulty with motor planning, sequencing, and coordination. (SD- 4-6).

15. On February 14, 2011, the Committee on Special Education ("CSE") met to develop an IEP for J.K. for the 2011-2012 school year. (See SD- 1).

16. The CSE recommended placement in a special class in a specialized school with a staffing ratio of 6:1:1 and a 1:1 crisis management paraprofessional, as well as Occupational

---

[2] References prefixed "Tr." are to pages in the Hearing Transcript; References prefixed "SD-" are to School District Exhibits; references prefixed "P-" are to Parents' Exhibits; IHO Decision is referred to as Decision.

Therapy (4x40x1; 1x40x2); Physical Therapy (4x40x1; 1x40x2); and Speech Therapy (4x40x1; 1x40x2). (See SD- 1-14).

17. The DOE did not intend to implement the program recommended for J.K. at the February meeting until July 2011, and provided no explanation or rationale for holding the meeting five months prior to this time. See SD- 1 at 2.

18. Through no fault of the Parents, the program recommendation resulting from the February 11, 2011, meeting was wholly inappropriate for J.K. and was not reasonably calculated to confer an educational benefit upon him.

19. In contravention of Federal and State law and regulations, the IEP team failed to recommend parent training and counseling for J.K. and his Parents. 8 NYCRR § 200.13 (d); 8 NYCRR § 200.1 (kk), (qq); 34 C.F.R. § 300.34, Ex I, Ex. J.

20. The IEP team failed to include a clearly effective and appropriate educational and therapeutic methodology on J.K.'s IEP.

21. The IEP team failed to consider recommending a non-public school program for J.K., and determined his school placement based solely on his diagnosis of autism and the 6:1:1 staffing ratio which is recommended for children in NYC with a diagnosis or classification of autism.

22. Accordingly, the Parents assert that the February 2011 program recommendation was a generic recommendation and not tailored to J.K.'s unique needs and abilities

23. The IEP was not provided to the Parents following the February 14, 2011 meeting. The IEP was finally produced five days prior to the start of the Impartial Hearing pursuant to 8 NYCRR §200.5(j)(3)(xii)(a).

24. The Parents received a final notice of recommendation ("FNR") dated June 10, 2011,

offering placement at P226 at Julia Richman High School. (SD- 3).  L.W. visited the

recommended placement on June 20, 2011 with Andrea Albert, a Social Worker from the

Rebecca School ("Rebecca"). (Tr. 415).

25. J.K.'s parents maintain that the IEP developed by the CSE, the program

recommendation of a 6:1:1 special class with a 1:1 paraprofessional, and the placement

recommendation at P226 are insufficient to meet J.K.'s significant needs. (P- A, P-C).

26. Because of their disagreement with the recommendations of the CSE and the resulting

denial of a FAPE, the Parents unilaterally placed J.K. at Rebecca for the 2011-2012 school year.

The parents notified the Department of Education ("DOE") of this placement by letter dated June

17, 2011 and further indicated that they would seek reimbursement from the DOE for the tuition

paid for the 2011-2012 school year. (P-C).

27. The parents requested an impartial hearing on July 5, 2011. They referenced the

Notice that was given to the district on June 17, 2011, and continued to challenge the DOE's

recommendations given the DOE's failure to remedy the defects contained in the Notice. (P- A).[3]

28. On December 20, 2011, the IHO dismissed each of the Parents' claims, concluding

that the IEP and placement were appropriate for J.K. (See IHO Decision, generally).  It was

further found that "the DOE has met its burden of proof that it could have individualized and

differentiated instruction so as to maintain an appropriate range of academic instruction to

provide appropriate opportunities to achieve the Student's annual goals" and that "the site

offered would have addressed the child's needs and [was] reasonably calculated to provide

educational benefits" (Decision at 21, 22). The IHO then gratuitously found that the Parents

would not have met their burden in proving the appropriateness of Rebecca. (Decision at 27).

---

[3] See Impartial Hearing Request (P-A) for a full recitation of allegations raised.

29. On January 24, 2012, the parents timely appealed the IHO's determination to the New York State Education Department's Office of State Review as the IHO's determination is not supported by the weight of the evidence, facts presented during the hearing, or relevant statutory and case law.

30. On March 29, 2012 a State Review Officer issued a decision denying the Parents' request for reimbursement.  *1.

31. The State Review Officer inappropriately refused to consider the Parents' allegations that that the District failed to conduct all necessary evaluations of J.K. prior to developing the February 2011 IEP.  *1 at 8-9.

32. The State Review Officer inappropriately determined that IEP team's failure to fully discuss the annual goals did not deny J.K. of educational opportunity or result in the Parents' inability to fully participate in his education, despite the CSE including goals that were designed to be addressed between December 2010, when they were drafted by the Rebecca School, and July 2011, when IEP team intended to implement the proposed program.  * at 11

33. The State Review Officer incorrectly held that the District had sufficient evaluative information about J.K.'s academic abilities and functional performance so as to permit the IEP team to develop an appropriate program for the 2011-2012 school year.  *1 at 12-13.

34. The State Review Officer incorrectly determined that placement in a 6:1+1 special class was appropriate for J.K.  *1 at 13-18.

35. The State Review Officer ignored that the proposed placement was unable to provide the sensory integration occupational therapy services that J.K. requires in order to be available for the learning process.  *Id*.

36. The State Review Officer inappropriately determined that the 6:1+1 class placement

was appropriate for J.K. because state regulation provides that it is a placement designed for "students whose managements needs are determined to be highly intensive," without considering the appropriateness of such placement specifically for J.K.  *1 at 16.

37. The State Review Officer inappropriately and incorrectly determined that J.K. could be provided with instructional services by a paraprofessional, despite state law and regulation prohibiting such.  *1 at 16-19.

38. The State Review Officer incorrectly determined that the lack of music therapy in J.K's program, which he required in order to gain an academic benefit, did not deny him of educational benefit.  *1 at 19-20.

39. In contravention of Federal and State law and regulations, the State Review Officer excused the IEP's team failure to recommend parent training and counseling for J.K. and his Parents. 8 NYCRR § 200.13 (d); 8 NYCRR § 200.1 (kk), (qq); 34 C.F.R. § 300.34; *1 at 20.

40. The State Review Officer ignored the record evidence and determined that placement at P.226 would be appropriate for J.K., despite significant concerns regarding the size of the school, the transitions that J.K. would be required to undergo in order to attend the school, the lack of sensory equipment at the school, and the inappropriate grouping of students within the proposed class.  *1 at 20-24.

41. The parents have demonstrated that Rebecca is appropriate for J.K. for the 2011-2012 school year because it provides education instruction specifically designed to meet his unique needs.

42. In this case, the parent participated in the CSE meeting to develop an IEP for J.K. The parent provided a private psychological evaluation and secured the participation of the psychologist who conducted the evaluation for the CSE meeting.

43. The CSE failed to contact the Parents or otherwise respond to their letter dated June 17, 2011. The Parents demonstrated their willingness to cooperate with the DOE throughout and complied with the statutory provision that "serves the important purpose of giving the school system an opportunity, before the child is removed, to assemble a team, evaluate the child, devise an appropriate plan, and determine whether a [FAPE] can be provided in the public schools." However, the DOE ignored the Parents' concerns and chose instead to leave itself liable for reimbursement for J.K.'s private school placement. Greenland Sch. Dist. v. Amy N., 358 F.3d 150, 160 (1st Cir. 2004).

**First Claim for Relief**
**(Denial of FAPE in Violation of the IDEA)**

1.      Plaintiffs repeat and reallege the allegations stated in paragraphs 1 through 43 as if fully set forth herein.

2.      In violation of the IDEA, 20 U.S.C. § 1400 *et seq.*, Defendant denied J.K. a FAPE for the 2011-2012 academic year.  Such denial results from the substantive inadequacies in the IEP and the proposed placement at P.S.226, as described above or as otherwise may be established.

**Second Claim for Relief**
**(Denial of Rights Under Section 504 of the Rehabilitation Act)**

3.      Plaintiffs repeat and reallege the allegations stated in paragraphs 1 through 43 as if fully set forth herein.

4.      By failing to confer the benefits provided to J.K. under the IDEA as amended (20 U.S.C. § 1400 *et seq.*), Defendant has violated Section 504 of the Rehabilitation Act (29 U.S.C. § 794) and the regulations promulgated thereunder.

**Third Claim for Relief**
**(Denial of Rights Under New York State Law)**

5.      Plaintiffs repeat and reallege the allegations stated in paragraphs 1 through 43 as if fully set forth herein.

6.      Defendant has violated Article 89 (N.Y. Educ. Law § 4400 *et seq.*) and regulations promulgated thereunder by failing to provide J.K. with a FAPE, as set forth above or as otherwise may be established.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court:

a.      reverse the SRO's decision of March 29, 2012;

b.      hold that the DOE failed to provide J.K. with a FAPE for the 2011-2012 school year;

c.      determine that the Rebecca School placement was appropriate for J.K. for the 2011-2012 school year;

d.      determine that a consideration of the equities supports the Parents' request for reimbursement of tuition paid to the Rebecca School for the 2011-2012 school year;

e.      order the DOE to reimburse Plaintiffs for tuition paid to the Rebecca School for the 2011-2012 school year;

f.      declare that Plaintiffs are the substantially prevailing party;

g.      grant leave, pursuant to governing law, to Plaintiffs' counsel to submit a fee application for the purpose of recovering statutory attorneys fees and other recoverable costs incurred at the administrative level, the SRO level, and in this action; and,

h.      grant Plaintiffs any additional relief as the Court deems appropriate.


Dated: New York, New York
          June 27, 2012

Respectfully Submitted,


**SKYER & ASSOCIATES, L.L.P.**

By:  _____
      JESSE COLE CUTLER
      SKYER & ASSOCIATES, L.L.P.
      276 Fifth Avenue, Suite 402
      New York, NY 10001
      (212) 532-9736
      jcutler@skyerlaw.com

      *Attorneys for J.K.*